**FILED**

Jun 14 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ sonlad _____ DEPUTY

Anton Ewing (*not an attorney*)
3077 Clairemont Drive #372
San Diego, CA 92117
anton@antonewing.com.
(619)719-9640

Plaintiff in propria persona

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton Ewing, an individual, | Civil Case No.:  **'19CV1112 DMS LL** |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Oxford Tax Partners, LLC, an Illinois limited liability company; | **TCPA 47 USC §227(b)(1)(A)**<br>**TCPA 47 USC §227(c)(5)** |
| Defendant. | |

Plaintiff Anton Ewing ("Plaintiff"), complains against Defendant Oxford

Tax Partners, LLC, an Illinois limited liability company ("OXFORD TAX

PARTNERS"), and alleges as follows:

## I.    INTRODUCTION

1.    Plaintiff is not an attorney.  Plaintiff is not a lawyer.  Plaintiff is not a

PLAINTIFF'S INITIAL COMPLAINT - 1

member of any State Bar.  See attached order from 18-cv-1455-LAB from the Honorable Chief Judge Larry A. Burns.

2.      On August 18, 2017, Joe, a male employee of "Oxford Tax" called Plaintiff. Plaintiff was very angry and very stern on the phone with the Oxford employee and expressly informed him that the lead he got was a fraud and a scam.  Joe said his number was 773-570-439.  Plaintiff expressly told Joe to preserve all evidence and that Plaintiff was going to send over a subpoena.  Plaintiff also told Joe not to delete evidence of a potential criminal case regarding the fraudulent inputting of Plaintiff's information on Oxfords web page.

3.      Plaintiff informed Joe at Oxford to not telemarket him again on August 18, 2017.

4.      Julie Dees ("Dees") is an employee of Oxford Tax Partners, LLC who calls herself a "Tax Advisor."  Nagle hired Dees.  Nagle directs Dees.  Nagle tells Dees was to do.

5.      Oxford Tax Partners, LLC was formed in Illinois on July 1, 2015 and it is headquartered at 215 W Ohio Street, Suite 600, Chicago, IL 60654.

6.      Stephen H. Down provided Dees with Plaintiff's phone number.

7.      Stephen H. Down instructed Dees on how to telemarket Plaintiff.

8.      Stephen H. Down and Nagle both ordered and conspired with Dees to violate 47 USC §501.

9.     On June 14, 2019, Defendant's attorney Matthew Wilson, Esq emailed Plaintiff with a powerpoint screenshot of Defendant's CRM system.

10.    Consent to be called for is an affirmative defense that Defendant must prove.

11.    Plaintiff does not have to prove an absence of consent to being called.

12.    Said screenshot listed Anton Ewing and anton@antonewing.com.

13.    Mr. Wilson stated in the email that his client, the Defendant, believes that Plaintiff went onto www.oxfordtaxhelp.com and filled out a questionnaire inputting Plaintiff's name, email and phone number.  Plaintiff did not do this.

14.    Plaintiff did not ask to be called by a robo-dialer with a pre-recorded voice from Defendant.

15.    The bubble popping sound at the beginning of Defendant's call signified and clearly establishes that an autodialer or ATDS was used.

16.    Plaintiff did not provide "express written consent" to be called for marketing and solicitation with an ATDS or autodialer.

17.    The phone number used by Defendant, 619-282-5880 is a spoofed number and is not a real telephone number belonging to any person.  It is illegal to spoof a phone number.

18.    47 USC §501 is a criminal statute.

19.    Plaintiff has never been to www.oxfordtaxhelp.com at any time relevant to this action.

20.     Plaintiff's ISP will prove that Plaintiff has, at all times relevant to this action, never been to Defendant's web page or ww.oxfordtaxhelp.com.

21.     On June 7, 2019, Dees admitted on the telephone that she used an automatic telephone dialing system on her computer to dial Plaintiff's cell phone, 619-719-9640, from her phone number 619-282-5880.  However, before that call, there was a distinct bubble popping sound at the very beginning of the first call from what sounded like a call center in Bangladesh.  Dees knew Plaintiff's name.  Dees said she used "special software" to provide tax help.  Dees admitted that she was recording the call at the end and not at the beginning.

22.     Call recording disclosure, unless exempted by CA Penal Code §633.5 for a PC §653m violation, otherwise requires disclosure of the fact of recording at the beginning of the call.

23.     A call to a cellular phone does not required personal confidential information to be exchanged in order to afford protection from illegal recording.

24.     Dees sent an email to Plaintiff from julie@oxfordtaxpartners.com.  Dees stated her direct phone was 312-858-8460.

25.     Local Rule 83.4 regarding civility and its prohibition against attorneys making derogatory statements about Plaintiff that disparages the intelligence, ethics, morals, integrity or behavior of Plaintiff Ewing, applies to Defendant's attorney.

26.    Local Rule 83.4 can be found at:

https://www.casd.uscourts.gov/_assets/pdf/rules/Local%20Rules.pdf

27.    Defendant's attorney has read Local Rule 83.4 and agrees to not harass, intimidate, or disparage Ewing.

28.    Defendant's attorney is subject to and bound by California Business & Professions Code section 6128 regarding criminal deceit by an attorney.

29.    Defendant's attorney agrees to not commit criminal deceit in his dealings with Plaintiff.

30.    If Defendant's attorney makes any derogatory remarks in his pleadings toward Plaintiff, then Plaintiff will file a State Bar complaint, move for Rule 11 sanctions and will ask the Court to refer said attorney to the Federal Bar standing committee on discipline.  See General Order 708 adopted 4/12/2019

31.    OXFORD TAX PARTNERS began harassing Plaintiff on or about June 7, 2019.  Plaintiff was stern with Defendant back on June 7, 2019 and was very clear about never telemarketing him ever again.  Since Defendant did not cease and desist, this lawsuit resulted.

32.    After the June 7, 2019 call, Plaintiff received an email from Dees using the oxfordtaxparnters.com domain.

33.    The June 7, 2019 calls were not the first calls.  Plaintiff knows this because of what the employee on the other end of the phone was stating.  Defendant's

statements showed that Defendant must have called prior, or must have paid and

hired and controlled some other contracted agent of theirs to call Plaintiff

previously.  When Dees called, she stated Plaintiff's name (or rather the name that

Plaintiff gives to telemarketers when they call).

34.     Often telemarketers higher controlled third parties to do their initial illegal

calling in violation of the TCPA.  The initial lead source always plays coy and will

not divulge who they are or who they are working for.  That in and of itself is a

violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC

§227(c)(5).  The only way that Plaintiff can find out who the TCPA violator is, is

to fain interest and "play along" on the call as the telemarketer reads the script and

illegally records the responses so they can sell the lead to Defendant Oxford Tax

Partners.

35.     The volume of illegal telemarketing calls in this country is skyrocketing.

Something must be done.  Plaintiff is doing something about it.

36.     The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case

number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only

way this, this act is going to get any teeth in it at all is through a serial litigant."

37.     Judge Kenney was referring to the TCPA when he made this above

statement on the record.  See attached.

38.     Defendant directly called Plaintiff on his DNC registered cell phone in

violation of the TCPA.

39.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Oxford Tax Partners, LLC

40.     Oxford Tax Partners, LLC has been illegally calling Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS.  Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Oxford Tax Partners, LLC, to change their ways.  To be clear, Plaintiff is suing Oxford Tax Partners for the directly dialed calls.  There were other calls through lead generators but this lawsuit is for the direct autodialed calls as well.

41.     The Defendant will hand over the lead source in discovery.

42.     Defendant Oxford Tax Partners, LLC paid Dees to make the above stated illegal calls to Plaintiff.

## II. PARTIES

43.     Plaintiff Anton Ewing is a citizen of California who resides in California, in this District.  Plaintiff is a person as defined by the TCPA.

44.     Defendant Oxford Tax Partners, LLC, is an Illinois limited liability company with its corporate office in Chicago, Illinois, and is NOT lawfully registered to do

business in California.

45.     Oxford Tax Partners is located at 215 W. Ohio Street, Suite 600, Chicago, IL 60654.

46.     Oxford Tax Partners is not licensed to prepare of any kind of taxes in California and therefore the selling and/or brokering tax help to Plaintiff was in and of itself an illegal act.

47.     Mr. John Nagle is practicing law in California without a license.

48.     Any persons that does taxes in California must have either a law license, CPA license, Enrolled Agent license or CTEC license.

49.     Oxford Tax Partners, LLC, does not hold any of the above said licenses.

50.     OXFORD TAX PARTNERS is managed by Stephen H. Down.

51.     Stephen H. Down is the sole member and owner of Oxford Tax Partners, LLC and its CEO.

52.     Dees called Plaintiff through an auto dialing system without permission.

53.     Dees did not have permission or consent to call or text Plaintiff.

### III. JURISDICTION AND VENUE

54.     This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

55.     This Court has personal jurisdiction over Oxford Tax Partners, LLC because

a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Oxford Tax Partners, LLC made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Oxford Tax Partners, LLC has also subjected themselves to personal jurisdiction in California because they are running and abetting said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Oxford Tax Partners, LLC through their dba's and agents, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to Oxford Tax Partners, LLC marketers and others within the organization in a knowingly illegal manner.

56.    Plaintiff was called on cell phone of 619-719-9640 by Oxford Tax Partners, LLC.  Plaintiff was called multiple times beginning on or about June 7, 2019, from 619-282-5880, a number owned, used and controlled by Oxford Tax Partners, LLC and its agents, with a prerecorded message which then transferred to a live human.  The initial part of the call was a pre-recorded message.  After many personal questions were asked and answered, the call was transferred to another Oxford Tax Partners, LLC person who repeated the same questions.   Defendant's employee asked if Plaintiff was interested in merchant cash advances or business loans.

57.    Plaintiff has expressly stated exactly what phone number Defendant used to call Plaintiff, as well as an exact date of one of the calls, to which number the calls

were made, what was said on the call and that the call was made with an ATDS and prerecorded message. All of this meets the particularity requirements for a cause of action.

58.    Plaintiff's phone number is not a business phone.

59.    Plaintiff's phone is registered on www.donotcall.gov and was done so more than 31 days prior to the first call.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

60.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

61.    The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

62.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

63.    Plaintiff Ewing alleges that Defendant Oxford Tax Partners, LLC placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from their phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time from December 2018 to June 14, 2019 and the presence of a pause or click (which is proven by the recording), which is

commonly associated with an Automated Telephone Dialing System (ATDS).

Those allegations are true and are sufficient to establish the elements of a TCPA

claim. There was a long delay when the calls connected every time and Plaintiff

heard a bubble popping sound right before the prerecorded message started.

## V. STANDING

64.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded

that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same

and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627

F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42

(7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010);

*Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following

*Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint

liberally").

65.     Standing is proper under Article III of the Constitution of the United States

of America because Plaintiff's claims state:

A. A valid injury in fact;

B. which is traceable to the conduct of Defendant;

C. and is likely to be redressed by a favorable judicial decision.  See,

*Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of WildLife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

66.    Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least five times by Defendant.  In fact, Plaintiff expressly informed Defendant to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well, Plaintiff had no prior business relationship with Defendant prior to receiving the seriously

harassing and annoying calls by Oxford Tax Partners, LLC   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls.  It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

67.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendant directly, or by Defendant's agent at the express direction and control of Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

68.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendant on the stated claims.

69.    "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016). In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016

U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at

1549-50). The court declined to follow Romero, explaining that Romero

"improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A

plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged

harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016,

No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

70.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting

*Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite

distinct from particularization. *Id.* An injury is "particularized" if it affects "the

plaintiff in a personal and individual way." *Id.* In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.*

However, an injury need not be "tangible" in order to be "concrete," and intangible

injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an

intangible harm constitutes injury in fact, *Spokeo* provided two factors to be

considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1)

whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or

American courts,' and (2) congressional judgment in establishing the statutory

right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

71.     Here, Plaintiff alleges that Defendant Oxford Tax Partners, LLC contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant JS Holding's product. Third, Plaintiff declares that he has never heard of Defendant Oxford Tax Partners, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendant Oxford Tax Partners nor has he ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendant used ATDS in sending their prerecorded solicitation messages. Plaintiff does not own video or

drone business and therefore could not possibly purchase loan services from Defendant.

72.    In Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendant to send the prerecorded messages.

## VI. FACTUAL ALLEGATIONS

## A.  Oxford Tax Partners, LLC

73.    One of Oxford Tax Partners, LLC's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

74.    Oxford Tax Partners, LLC uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

75.    Oxford Tax Partners, LLC sent Plaintiff an email containing a link to an application.  On said application it has attorney John Nagle, Esq as the person in charge.  It appears that John Nagle is an attorney in Chicago, Illinois with CAF number 0310-31155R and PTIN 01771516.

**B.  Plaintiff**

76.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C.  Telephone number** 619-719-9640

77.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

78.    619-719-9640 is on the National Do Not Call Registry.

79.    Mr. Ewing answers calls made to 619-719-9640.

80.    Mr. Ewing pays the phone bills for 619-719-9640.

**VII. FIRST CLAIM FOR RELIEF**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

81.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

82.    The foregoing acts and omissions of Oxford Tax Partners, LLC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

83.    The defendant in this matter is vicariously liable for the acts and actions of the lead source under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  Discovery will reveal the name of the lead agent.  Oxford Tax Partners, LLC controlled the lead agent and had actual knowledge of the TCPA violations.

84.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

85.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

86.    Plaintiff also seeks a permanent injunction prohibiting Oxford Tax Partners, LLC and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(B))

87.    Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

88.    The foregoing acts and omissions of Oxford Tax Partners, LLC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the

personal telephone 619-719-9640 number of Mr. Ewing without prior express written consent.

89.     Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

90.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

91.     Mr. Ewing also seeks a permanent injunction prohibiting OXFORD TAX PARTNERS, LLC, and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

92.     Plaintiff realleges and incorporate by reference each and every allegation set forth in the preceding paragraphs.

93.     The foregoing acts and omissions of Oxford Tax Partners, LLC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

94.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

95.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

96.     Plaintiff also seeks a permanent injunction prohibiting Oxford Tax Partners, LLC and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. EXHIBITS

97.     Exhibit A is a true and accurate copy of an email to Plaintiff from Defendant's employee.

98.     Exhibit B is a true and accurate copy of Oxford Tax Partners, LLC, a limited liability company details.

99.     Exhibit C is a true and accurate copy of the Defendant tax help application.

100.    Exhibit D is a true and accurate copy of LexisNexis excerpt from the Gomez and Crunch case.

101.    Exhibit E is a true and accurate copy of Civil Case No. 2:18-cv-02071, James Everett Shelton v. Fast Advance Funding, LLC.

102.    Exhibit F is a true and accurate copy of Plaintiff's AT&T telephone log.

103.   Exhibit G is a true and accurate copy of "Findings and Admonition to Plaintiff" by the Honorable Chief Judge Larry A. Burns dated 5/30/2019.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for this Honorable Court to enter judgment against all Defendant as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by OXFORD TAX PARTNERS, LLC violate the TCPA;

C. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

D. For an injunction prohibiting all Defendant from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

E. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

F. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

G. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

H. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

I. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

J. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

K. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

L. For any other relief that the Court deems just and proper.

## XII. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

      Dated:  June 14, 2019

                                                Anton Ewing,
                                                Plaintiff

# Exhibit A

**Anton@AntonEwing.com**

| | |
|---|---|
| **From:** | noreply@mail.hellosign.com on behalf of Oxford Tax Partners <noreply@mail.hellosign.com> |
| **Sent:** | Friday, June 7, 2019 2:15 PM |
| **To:** | seoresearchdata@gmail.com |
| **Subject:** | IRS Investigation Documents for Anthony Starkey - Signature requested by Oxford Tax Partners |

Oxford Tax
PARTNERS

Your Taxes are our Business

ACTION REQUESTED

**Oxford Tax Partners (julie@oxfordtaxpartners.com) has requested your signature**

REVIEW & SIGN

DOCUMENT

# IRS Investigation Documents for Anthony Starkey

**MESSAGE FROM OXFORD TAX PARTNERS (JULIE@OXFORDTAXPARTNERS.COM)**

Thanks,

Your Team at Oxford Tax Partners

Reply

1

# Exhibit B

```
Domain Name: OXFORDTAXHELP.COM
Registry Domain ID: 1950823146_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-08-03T16:46:52Z
Creation Date: 2015-08-03T16:46:52Z
Registrar Registration Expiration Date: 2017-08-03T16:46:52Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTrans
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateP
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewPro
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteP
Registry Registrant ID:
Registrant Name: Stephen Down
Registrant Organization:
Registrant Street: 1747 N. Rockwell Street
Registrant City: Chicago
Registrant State/Province: Illinois
Registrant Postal Code: 60647
Registrant Country: United States
Registrant Phone: +1.3125159219
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: shdown@hotmail.com
Registry Admin ID:
Admin Name: Stephen Down
Admin Organization:
Admin Street: 1747 N. Rockwell Street
Admin City: Chicago
Admin State/Province: Illinois
Admin Postal Code: 60647
Admin Country: United States
Admin Phone: +1.3125159219
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: shdown@hotmail.com
Registry Tech ID:
Tech Name: Stephen Down
Tech Organization:
Tech Street: 1747 N. Rockwell Street
Tech City: Chicago
Tech State/Province: Illinois
Tech Postal Code: 60647
Tech Country: United States
Tech Phone: +1.3125159219
Tech Phone Ext:
```

# Exhibit C

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

For IRS Use Only
Received by:
Name _____
Telephone _____
Function _____
Date _____

**1** Taxpayer information. Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| **Anthony Starkey**<br>**3077 Clairemont Drive, #372**<br>**San Diego, CA 92117** | ●●●●●●●●●● |
|  | Daytime telephone number / Plan number (if applicable) |

**2** Appointee. If you wish to name more than one appointee, attach a list to this form. Check here if a list of additional
appointees is attached ▶ ☐

| Name and address | |
|---|---|
| **Oxford Tax Partners**<br>**215 W Ohio St, Suite 600**<br>**Chicago, IL 60654** | CAF No.  **0311-60441R**<br>PTIN   **N/A**<br>Telephone No.            **773-360- 2187**<br>Fax No.    **773-893-1495**<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3** Tax Information. Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☒ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME/SPLIT LIABILITY | 1040/1099/SS-4/31 | 1993 THRU 2020 | NOT APPLICABLE |
| CIVIL PENALTY | NOT APPLICABLE | 199303 THRU 202012 | NOT APPLICABLE |
| SEPARATE ASSESSMENT | 1040 | 1993 THRU 2020 | NOT APPLICABLE |

**4** Specific use not recorded on Centralized Authorization File (CAF). If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . ▶ ☐

**5** Disclosure of tax information (you must check a box on line 5a or 5b unless the box on line 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
Note. Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you don't want any copies of notices or communications sent to your appointee, check this box . . . . . . . . ▶ ☒

**6** Retention/revocation of prior tax information authorizations. If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . . ▶ To revoke a prior tax ☐
information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7** Signature of taxpayer. If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DO NOT SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *N*⌒ | 6/7/2019 |
|---|---|
| Signature | Date |
| **Anthony Starkey** | |
| Print Name | Title (if applicable) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.         Cat. No. 11596P         Form **8821** (Rev. 1-2018)

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

For IRS Use Only
Received by:
Name _____
Telephone _____
Function _____
Date _____

**1** Taxpayer information. Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) | |
|---|---|---|
| **Anthony Starkey**<br>**3077 Clairemont Drive, #372**<br>**San Diego, CA 92117** | ~~~~~~~~~~~ | |
| | Daytime telephone number | Plan number (if applicable) |

**2** Appointee. If you wish to name more than one appointee, attach a list to this form. Check here if a list of additional appointees is attached ☒

| Name and address | |
|---|---|
| **John Nagle, Esq**<br>**215 W Ohio St, Suite 600**<br>**Chicago, IL 60654** | CAF No.  **0310-31155R**<br>PTIN  **P01771516**<br>Telephone No.  **773-360- 2240**<br>Fax No.  **773-360-2114**<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

**4** Tax Information. Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☒ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME/SPLIT LIABILITY | 1040/1099/SS-4/31 | 1994 THRU 2021 | NOT APPLICABLE |
| CIVIL PENALTY | NOT APPLICABLE | 199403 THRU 202112 | NOT APPLICABLE |
| SEPARATE ASSESSMENT | 1040 | 1994 THRU 2021 | NOT APPLICABLE |

**4** Specific use not recorded on Centralized Authorization File (CAF). If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . ▶ ☐

**5** Disclosure of tax information (you must check a box on line 5a or 5b unless the box on line 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
Note. Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you don't want any copies of notices or communications sent to your appointee, check this box . . . . . . . ▶ ☒

**7** Retention/revocation of prior tax information authorizations. If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . . ▶ To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions. ☐

**8** Signature of taxpayer. If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DO NOT SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| | |
|---|---|
| N̸ | **6/7/2019** |
| Signature | Date |
| **Anthony Starkey** | |
| Print Name | Title (if applicable) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.  Cat. No. 11596P  Form **8821** (Rev. 1-2018)

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c



2019

# Client Services
# Investigation Agreement

*Prepared Exclusively For:*

**Case # 101802-P1**

Anthony Starkey
3077 Clairemont Drive, #372
San Diego, CA 92117

Oxford Tax
PARTNERS

OXFORD TAX PARTNERS, LLC | 215 W Ohio St. Suite 600 | Chicago IL 60654
(312) 858-8460 | julie@oxfordtaxpartners.com

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

 Investigation Agreement



6/7/2019

**Anthony Starkey**
**3077 Clairemont Drive, #372**
**San Diego, CA 92117**

### RE: Tax Resolution; Case # 101802-P1

Dear Anthony:

We are pleased that you have contacted Oxford Tax Partners, LLC, for help with your tax situation.   Our engagement process is limited to the terms and matters identified in the enclosed agreement.

Per our conversation, the first step in addressing your tax situation is a comprehensive Investigation and Discovery into your full tax history.  Please indicate your acceptance of this Client Services Agreement ("Agreement") by signing the last page of this Agreement.

Once you've signed this Client Services Agreement as well as IRS Forms 8821 and 2848, my Compliance Team will contact the IRS directly on your behalf in order to access your full tax history.  Once we have your entire tax history, my Resolutions Team will evaluate both your tax situation as well as your financial situation, and craft a resolution action plan specifically for you.  The resolution action plan will be our recommendation on achieving the best possible resolution for your specific tax situation.

As we discussed, the fee for our Investigation is **$495.00**. Please note that I can't provide the Investigation Analysis to you until your Investigation fee is paid-in-full.  Though our Investigation can take several days to complete, the sooner you are able to pay the Investigation fee in full, the sooner we'll be able to present our findings to you.  The Investigation Analysis will include our recommended resolution program for you, as well as the cost for Oxford Tax Partners to achieve that resolution.

When your Investigation Analysis is complete and your Investigation fee is fully paid, I will reach out directly to you.  As tax matters are complicated, it is imperative that we connect again at that time so that I can walk you through the Investigation Analysis in detail.

Sincerely,

**Julie Dees** | *Tax Advisor*
Oxford Tax Partners, LLC

**Phone: (312) 858-8460**
**Email:  julie@oxfordtaxpartners.com**
**Fax:**

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

*Oxford Tax*
**P A R T N E R S**



**Oxford Tax Partners** is committed to achieving the                    for your complicated tax situation.

## IRS Tax Resolution
## State Tax Resolution
## Tax Return Prep

**Step 1:**
*Free Initial Consultation*

**Step 2:**
*Investigation & Discovery*

**Step 3:**
*Resolution Planning & Negotiation*

**Step 4:**
*Resolution Submission & Acceptance*

BBB A+ RATING

\ INTEGRITY \
We've been battling the IRS for our clients since 2004, while maintaining an A rating with the BBB. We must be doing something right!

FLEXIBLE PAYMENT PLANS AVAILABLE

\ FLEXIBILITY \
We understand that many of our clients are on strict budgets, and so we do our best to provide manageable payment plans for every client.

\ NATIONWIDE PRESENCE \
We represent clients in all 50 states. Our team of Tax Attorneys are experts in all areas of Federal and State tax negotiations.

## OUR MISSION
At Oxford Tax Partners, our only mission is to achieve the best possible outcome for your unique and complicated tax situation. While this sounds simple, the world of IRS tax code is very complicated. For over 10 years, we've used our vast IRS tax knowledge and experience to gain favorable resolutions for thousands of happy clients.

## HOW DOES THE PROCESS WORK?
Your initial touchpoint with Oxford Tax is with one of our Senior Tax Advisors. Your Advisor will listen to your tax issues and ask you a few questions related to your income, assets, debts, etc. If it appears that you are a good candidate for a resolution, the next step is to perform a formal investigation. This will allow our team to understand your full situation, and formulate a resolution action plan specifically for you. **The goal is to make sure that you pay the least amount of money possible to the IRS/State!**

Should you decide to become an Oxford Tax client, your case file will be promptly transitioned to a Resolutions Team, which consists of a Tax Attorney, Accountant, and Case Manager. The initial step for your team will be to prepare and file any missing tax returns. Once filed, your Tax Attorney will start the process of preparing and submitting your proposed resolution to the IRS and/or state.

## WHAT OUTCOME CAN I EXPECT?
Your outcome depends on the unique details of your specific situation. But, we've built our business by identifying and achieving the best possible outcome for our clients. Our Tax Attorneys are experts in negotiating hardship program enrollments on a daily basis for our clients, including:

- Currently Not Collectible (CNC)
- Offer In Compromise (OIC)
- Penalty Abatement (PA)
- Installment Agreement (IA)
- Partial Pay Installment Agreement (PPIA)
- Streamlined Installment Agreement (SIA)



✓ **Individual Taxpayers**
✓ **Businesses**

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c



**Our goal is to make sure that you pay the least amount of money possible to the IRS**

*Our **Tax Attorneys** specialize in all aspects of IRS tax debt settlement, including wage garnishment releases, bank levy releases, and hardship program enrollments.*

## WHAT MAKES OXFORD TAX UNIQUE?

Oxford Tax has become a leader in the industry by adhering to 2 core philosophies:

**#1** Every prospect receives a 100% free initial consultation. We won't continue the process with you unless we feel that you are a strong candidate for a resolution with the IRS and/or State.

**#2** Every Oxford Tax client is represented by a licensed Tax Attorney. Other companies often represent their clients with Enrolled Agents. We've found that Tax Attorneys are more likely to obtain the best possible outcomes for our clients, and so we only represent our clients with Tax Attorneys. **That's the Oxford Tax difference!**

## WHY SHOULDN'T I HIRE A LOCAL TAX ATTORNEY?

While you most likely have tax attorneys in your local market, those attorneys don't specialize in negotiating with the IRS or state tax authorities. At Oxford Tax, all we do is represent our clients on IRS and/or state tax matters. We are able to produce better results because that is all that we do.

### WHAT OUR CLIENTS ARE SAYING

*"Working with Oxford Tax has been a huge relief for my situation. Both Brian and Michael have been very responsive and knowledgeable. They have taken over all of my interactions with the IRS, which has been a huge relief in my life right now. They are still negotiating with the IRS but it looks like they are going to get for me a very favorable outcome to my issues. They have also completed and filed 8 years worth of tax returns for me!"*  **Ryan M.**

*"I want to thank Oxford Tax for the professional work that was done to work out a payment plan with the IRS on my behalf. When I worked with the staff of Oxford Tax I was always treated in a professional manner and my questions and concerns were always addressed in a respectful time period."*  **Jay B.**

*"I am so glad I found Oxford Tax Partners. Professional right from the start and they don't mess around; they attack your situation and offer you the best options on your IRS problem. There are so many of these "Help you with the IRS" companies that promise the world and feed on taxpayer fear -not the case with Oxford whatsoever. I'm relieved now that my situation has been resolved!"*  **BJC**











**Contact me today** and put your tax issues behind you, once and for all!

**Julie Dees**
*Tax Advisor*

**Call or Text:** (312) 858-8460
**Email:**     julie@oxfordtaxpartners.com

215 W. Ohio Street, Suite 600
Chicago, IL 60654

www.oxfordtaxpartners.com



*Your taxes are our business.*

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180

Investigation Agreement

$Oxford \; Tax$
P A R T N E R S

## Oxford Tax Partners, LLC

215 W Ohio St. Suite 600, Chicago, IL 60654

## OTP Service Agreement

This Agreement shall be between **Anthony Starkey** ("Client") and Oxford Tax Partners, LLC ("OTP"), a company incorporated in the State of Illinois, and shall be effective as of the date signed.

**SCOPE OF ENGAGEMENT:** This Agreement sets forth the terms and conditions of OTP's engagement period concerning Client's Federal and/or State tax accounts and potential tax liability.  Client has contracted OTP to perform a comprehensive investigation into the client's full tax liabilities. OTP will file Form 8821 with the Internal Revenue Service, allowing OTP access to the client's master IRS tax file.  OTP will maintain all sensitive client data and information in strict confidence, and will use IRS Form 8821 only for the activities described herein.

Upon completion of the investigation, OTP will provide an Investigation Analysis to the Client.  Client acknowledges that the Investigation Analysis will not be provided to the Client until the Investigation fee is fully paid.  A resolution action plan and proposal will be included in the Investigation Analysis.  Client acknowledges that any resolution engagement with OTP will be at an additional cost.

Following delivery of the Investigation Analysis to the Client, Client may engage OTP in an attempt to enter Client into a resolution with the Internal Revenue Service ("IRS") and/or State Taxing Authority, per the list of "Tax Resolution Services Contracted For" to be agreed upon by Client and OTP.

Services provided may include any or all of the following:

- OTP will represent the Client before the Internal Revenue Service and/or State, per the list of "Tax Resolution Services Contracted For", via the submission of a Power of Attorney.
- An OTP representative will contact the Internal Revenue Service and/or State immediately to intercede with direct contact with the Client.
- OTP will obtain and review Client account transcripts to obtain an accurate determination of the liability and ensure Client pays no more than what is owed.

- OTP will assist in preparing all pertinent information for the relevant Taxing Authority, including but not limited to preparing Collection Information Statements and other collection division forms.
- OTP will consult with Client via telephone conference, review financial condition of Client, review extent of Client's assets, review Client's current tax compliance, review case history with Tax Authority, and gather any additional information from Client that OTP deems necessary to achieve a resolution.
- OTP will, if in the best interest of the Client, request a stay on enforced collection with relevant Taxing Authority and communicate to Client the terms negotiated to maintain such stay of enforced collection with Taxing Authority.

Client is advised that various strategies are available for settlement of the outstanding liability, including but not limited to, abatement of penalty, installment agreements, offers-in-compromise, currently not collectible, lending and/or restructuring of business and finances.

While the majority of Client's information is collected from the IRS master file, OTP will need additional information from Client in order to prepare complete and accurate returns.  OTP may ask Client to clarify some of the information, but OTP will not audit or otherwise verify the data submitted by Client.  Information requested must be supplied in a timely manner. OTP will perform only those accounting services that are needed to prepare Client's tax returns.  OTP's work will not include an investigation to find defalcations or other irregularities.  Accordingly, the services OTP provides should not be relied upon to disclose errors, fraud or other illegal acts.  OTP will, however, inform Client of any material errors, irregularities, fraud or other illegal acts discovered during the preparation. All work performed will be done in compliance with the laws of the United States and the regulations and mandates set forth by the IRS.  In accordance with the law, the IRS imposes penalties when taxpayers underestimate their tax liability.  Client should inform OTP of any concerns about such penalties. If, during the preparation of Client's tax returns, OTP encounters instances of unclear tax law, or potential conflicts in the interpretation of the law, OTP will contact Client and clearly outline the reasonable courses of action and the risks and consequences of each. OTP will ask that Client, with OTP's assistance and recommendations, choose the course of action that Client wish for OTP to undertake.

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

 Investigation Agreement 

OTP will convey to Client any pertinent correspondence, requirements and/or negotiations with the IRS and/or State Taxing Authority conducted on behalf of the Client. Unless otherwise specified, OTP will represent Client through the initial administrative levels of the IRS and/or State Taxing Authority.

**COMMUNICATION:** During the course of the engagement process, Client must remain in communication with OTP. Client must provide a valid contact phone number and/or other means of contact to OTP at which Client can be reached at any time. Any attempt at contact or request for information must be responded to in a timely fashion. Failure to provide information when requested may negatively affect or delay the engagement process. During the course of the engagement process, OTP may express opinions or beliefs concerning Client's tax liabilities and the possible results of Client's case. Any such statement made by any employee, partner, agent or affiliates of OTP is intended to be an expression of opinion only, based on information available to OTP at the time, and should not be construed as a promise or guarantee. OTP will perform the duties outlined in this Agreement, inform Client of the progress of Client's case, and respond to Client's inquires and communications. The IRS and State Taxing Authorities decide the outcome of all submissions. Despite OTP's good faith efforts, OTP has no control over the IRS and State Taxing Authority's final decisions, and therefore, OTP does not make any guarantees regarding the outcomes of Client's case. However, OTP will attempt to deliver high quality, cost effective tax services and always work in Client's best interests, subject to the duties of professional responsibility and applicable laws.

**FEES:** OTP will charge an Investigation fee in the amount of **$495.00** in order to perform the services listed below under the "Services Contracted For" heading. The total Investigation fee amount will be collected per the attached Payment Schedule. If Client chooses to engage OTP to attempt to enter Client into a resolution with the IRS and/or the State Taxing Authorities, OTP will charge an additional Tax Resolution fee, which OTP will present to Client and which Client will agree to following delivery of the Investigation Analysis. The outcome of Client's resolution is based on the scope of the work outlined above, as well as OTP's expertise and experience with these matters. Client must also provide information pertinent to this matter accurately, timely, truthfully, and fully to achieve said outcome. In consideration of the services provided by OTP, Client agrees to pay fees in full per the schedule listed on Client's Payment Authorization Forms. If Client fails to adhere to any part of Client's

payment schedule, OTP will halt all progress on the file. If the failed payment isn't corrected in a timely manner, OTP reserves the right to terminate representation. Engaging the services of OTP does not mean Client is hiring a law, accounting, or securities firm, but a tax and creditor debt resolution firm. When OTP's services conclude, all unpaid charges shall become immediately due and payable. After services conclude, OTP will, upon Client's request, deliver Client's file to Client, along with any Client property in OTP's possession. OTP shall have no obligation to retain Client's files beyond one year after services conclude.

**CLIENT DUTIES AND RESPONSIBILITIES:** Client agrees to be truthful, cooperative and responsive, and to provide OTP with a full and accurate disclosure of Client's financial condition. Client agrees to complete and return all requested information to OTP in a timely fashion. Client will notify OTP of any changes in Client's financial circumstances, marital status, contract information or any other information in a timely fashion. Client agrees to return to OTP all forms and documents prepared by OTP in a timely fashion, without any changes, alterations, or modifications unless Client expressly notifies OTP of such changes. Client acknowledges that Client is responsible for all fees charged by the IRS and State Taxing Authority. Unless agreed upon by OTP and Client through a separate agreement, Client has not retained OTP for any services other than those addressed within this Agreement. Client possesses the absolute right to accept or reject any resolution negotiated or proposed by OTP on behalf of Client. Client acknowledges that OTP makes no warranties or representations as to time to perform or complete services or to the outcome of the tax situation. Client understands that the IRS and State Taxing Authorities determine the acceptability of any resolution proposal and may reject, counter, or accept any proposal submitted to such authority. Client understands that time is of the essence and failure to submit or respond to requests for information could have a detrimental effect to the Client's tax situation. Such failure can result in enforced collection activity including but not limited to liens, levies, and wage garnishment. Client also understands that penalties and interest may continue to accrue on Client's tax liability until such time as the tax liability is paid in full, settled, or can no longer be collected by any taxing authority.

**LIMITATION OF SERVICES:** Client expressly acknowledges that OTP is not a law firm. OTP and its employees provide tax representation before the applicable taxing authorities, including, but not limited to, the IRS and any applicable State Taxing Authority. The representations of OTP and its employees should not be construed as legal

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

 Investigation Agreement 

counsel. Furthermore, OTP's services do not include representation in connection with any litigation conducted in any federal, state, or local court systems.

**DISCLAIMERS:** OTP has made no promises or guarantees to Client about the outcome of Client's tax liability with the IRS and/or State Taxing Authority. Nothing in this agreement shall be construed as such a promise or guarantee of any kind. OTP does not make any guarantees or assurances that tax liens will not be filed, or that any other enforced collection actions will be avoided as OTP cannot control government policies, procedures, or changes in law or due to the lack of disclosure by the Client. Any failure to maintain in communication with OTP or failure to uphold any Client responsibilities as outlined in this agreement shall cause OTP to discontinue rendering services.

**TERMINATION:** Either party may terminate this agreement for any reason. Upon cancellation of this agreement, all unpaid balances become immediately due for payment. Client understands that any request to terminate this agreement by Client must be made in writing and received by OTP at least three **(3)** business days prior to any scheduled electronic debit in order to prevent such debit. Written notice is defined as receipt of a letter, fax, or an email communication addressed to the Billing Department of OTP. This notice of termination must include Client's name, address, and subject matter.

However, in certain circumstances, OTP may, at its sole discretion, agree to accept Client's verbal termination notice via telephone transmission, subject to identity verification, among other requirements. OTP reserves the right to nullify and void any of its obligations should Client fail to provide OTP with information in a timely manner or if the Client provides false or misleading information. Timely manner is defined as ten (10) business days from the request date. As a result, all unpaid balances shall become immediately due.

**ELECTRONIC COMMUNICATION AND TRANSMISSIONS:** Client agrees that OTP may occasionally send and Client will receive, in an electronic format, information pertaining to Client's tax liability. Electronic communications will only occur if Client provides a fax number or email address of where to send such communications. Client may at any time provide an any records, along with all supporting documents, cancelled checks, and other data that form the basis of income and deductions as these items may later be needed to prove the accuracy and completeness of the returns to a taxing authority. OTP retains its own records

alternate fax number or email address to receive such communications with the understanding that such change will supersede any previous agreements. All electronic communications will be deemed to be valid and authentic, and Client agrees that those electronic communications will be given the same legal effect as written communications.

Client has a right to receive a written copy of any electronic record if applicable law specifically requires OTP to provide such documentation. Client's consent may be withdrawn at any time upon OTP's receipt of such withdrawal. Client acknowledges and agrees that electronic communications are considered inherently unsecure. Therefore, Client agrees that OTP has no liability to Client whatsoever for any loss, claims, or damages arising or in any way related to any electronic communication. At all times, Client maintains the sole obligation to ensure that Client can receive OTP's electronic communications, and access them on a regular and diligent basis. However, Client has the option to receive all communications via telephone transmission or by means of the United States Postal mail.

**QUALITY CONTROL AND COMPLIANCE MONITORING:** Client understands that all calls may be recorded and monitored for quality and compliance purposes. Client consents to OTP recording and monitoring all communications with Client, storing and using such communications in compliance with OTP's privacy policy and applicable laws.

**CONFIDENTIALITY:** OTP shall hold Client's personal information in confidence, except as necessary in the course of OTP's performance of services under this agreement. Specifically, Client authorizes OTP to: (a) disclose such confidential information as necessary to third parties in order to facilitate the resolution of Client's tax liability; and (b) obtain necessary tax information concerning Client from any taxing authority.

**DISPOSITION OF RECORDS AND FILES:** Client should not mail original documents or records as they will not be returned to Client. Following the termination of OTP's services, any nonpublic information that Client has supplied to OTP will be kept confidential in accordance with applicable rules of professional conduct. However, it is in Client's best interest to securely store and work product in order to be able to assist Client with Client's professional needs, and in some cases, to comply with applicable rules of professional conduct. In order to guard nonpublic personal information, OTP maintains physical, electronic, and procedural safeguards that

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

 Investigation Agreement



comply with rules of professional standards; however OTP reserves the right to destroy and dispose such documents in its entirety.

**INDEMNIFICATION:** Client agrees to indemnify and hold harmless OTP and OTP's employees, partners, agents, and affiliates from any and all liabilities, costs, expenses, claims, actions, fines, penalties, proceedings, damages or demands of any kind or nature, occasioned by or arising in connection with any and all third party claims incurred as a result of any intentional conduct, fraudulence, negligence or acts or omission of Client or any breach or default in the performance of any obligation of Client under this agreement.

**ARBITRATION:** Although OTP does not anticipate that any dispute may arise between the parties, in the unlikely event of a controversy, dispute, or question arising out of, or in connections with this agreement or engagement, such dispute shall be determined by binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association. Any such arbitration shall be held in Chicago, Illinois unless the parties mutually agree on an alternative location. The arbitrator shall have the discretion to order that the costs of arbitration, including

fees, other costs, and reasonable attorneys' fees shall be borne equally by the parties.

**SEVERABILITY:** This written Agreement constitutes the full and complete agreement as to the engagement services to be provided by OTP on behalf of Client. No prior agreement, correspondence or understanding pertaining to any such matter shall be effective to interpret or modify the terms hereof. Therefore, this written Agreement supersedes any and all other agreements or understandings, whether written or oral. Every provision of this agreement is intended to be severable from this agreement. It is specifically agreed by and among the parties hereto that if any of the provisions of this agreement shall contravene or be invalid as a matter of law, then it is agreed that such contravention or invalidity shall not invalidate the whole Agreement, but the Agreement shall be construed as if not containing the particular provision or provisions held to be invalid.

**GOVERNING LAW:** The laws of the State of Illinois shall govern the validity of this agreement, the construction of its terms herein, and the interpretation of the rights and duties of each party.

**I represent that I have read, understand, and agree to be bound by the terms of this Client Services Agreement in its entirety. I acknowledge that this Client Services Agreement has been explained to my full satisfaction, and that I have no unanswered questions about the Client Services Agreement.**

AGREED AND ACCEPTED:

Date:  **6/7/2019**

Name: **Anthony Starkey**

Sign:  _____

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

# THE OXFORD GUARANTEE

There are very few things in life that are guaranteed and we are proud to say that our service is certainly one of them. Our overall resolution results consistently prove how important it is for us to investigate every single tax situation that comes our way. Every taxpayer is entitled to hire someone they can trust and we believe that our program allows you to do just that. When you enroll into our Investigation, we guarantee the following:

- ✓ File Form 8821
- ✓ Contact an IRS Representative directly
- ✓ Perform a detailed Compliance Check outlining all outstanding tax issues
- ✓ Obtain any official IRS transcripts for years in question
- ✓ Execute a thorough Financial Analysis based off the info you provided
- ✓ Analyze our findings for prequalification into all available resolution programs
- ✓ Compile a formal resolution strategy
- ✓ Finalize the cost for each strategy provided

## If we fail to do any of the items listed above,
## we guarantee your MONEY BACK!!

We are very confident in our process and think you're entitled to a 100% refund of the investigation fee if we fail to complete any of the services listed above. A 'Satisfaction Guarantee' doesn't promise you answers, but a 'Service Guarantee' does, so that's what we're willing to provide.

**Stephen Down,** *Co-Founder*

Anthony Starkey

*Terms and Agreement for 'The Oxford Guarantee': Client agrees and understands that a refund is only warranted if Oxford Tax Partners (OTP) fails to perform the outlined responsibilities. Refunds do not apply to a client's frustration, dissatisfaction, or discontent with the results of the investigation performed by OTP. Client understands that OTP cannot guarantee specific outcomes with the IRS or any state taxing authority. All resolution options will be presented to the client and OTP will provide the client with any information they've obtained regarding their tax problem. If OTP determines that no solution(s) are available to resolve the tax matter, the client will receive a full refund for the investigation service fee.*

 Investigation Agreement



## Services Contracted For

| Product Name | Description | Quantity | Price |
|---|---|---|---|
| Personal Investigation - IRS | OTP will provide a comprehensive Investigation Analysis and Case Review upon completion of the investigation. | 1 | $495.00 |

## Total Investigation Fee: $495.00

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

 Investigation Agreement



## <u>PAYMENT AUTHORIZATION AND PAYMENT SCHEDULE</u>

I have read and agree to all the terms and conditions on this page and any other contract or document that accompanies this agreement. I certify that I am the authorized account holder for the payment account information provided verbally to OTP. I understand this is a legally binding agreement between Client and Oxford Tax Partners, LLC ("OTP"). I also understand that if my transaction fails, for any reason, OTP will attempt to run the transaction at its discretion within 72 hours. I also agree not to dispute these scheduled payments with my bank/credit card company. If I decide to cancel services, I understand that I must notify OTP at least 3 days prior to the next billing date in order to avoid any future charges. I understand and hereby acknowledge that before OTP can begin its efforts to resolve my tax matters, I agree to pay all fee(s) by the means set forth on this "Payment Authorization Form" and any subsequently executed Payment Authorization Form. I therefore authorize OTP to process all my payments automatically according to the payment schedule listed below. Additionally, I acknowledge that the fees in this Agreement only cover the corresponding services listed per the "Tax Resolution Services Contracted For". Any fees for additional services I wish to retain may be agreed upon verbally over the phone or electronically.  I authorize regularly scheduled charges to the credit card or bank account that I provided verbally to Oxford Tax Partners, LLC, per the payment schedule that I set verbally with OTP.

**NOTE: FAILURE TO MAKE PAYMENTS, PER YOUR PAYMENT SCHEDULE, WILL RESULT IN AN IMMEDIATE SUSPENSION OF YOUR CASE AND ALL WORK WILL STOP IMMEDIATELY. SUSPENSION COULD JEOPARDIZE PROTECTION FROM IRS COLLECTION ACTIVITY.**

Doc ID: c0c390f4537a954c9aee1af9226d8bd9d877180c

# ▽ HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | IRS Investigation Documents for Anthony Starkey |
| **FILE NAME** | content, content |
| **DOCUMENT ID** | c0c390f4537a954c9aee1af9226d8bd9d877180c |
| **STATUS** | ⊛ Completed |

**This document was requested from oxfordtax--hellosign.na80.visual.force.com**

## Document History

| | | |
|---|---|---|
| ⟳ **SENT** | **06/07/2019** 16:15:09 UTC-6 | Sent for signature to Anthony Starkey (seoresearchdata@gmail.com) from julie@oxfordtaxpartners.com IP: 144.121.162.106 |
| 👁 **VIEWED** | **06/07/2019** 16:26:08 UTC-6 | Viewed by Anthony Starkey (seoresearchdata@gmail.com) IP: 70.95.42.170 |
| ✎ **SIGNED** | **06/07/2019** 16:30:37 UTC-6 | Signed by Anthony Starkey (seoresearchdata@gmail.com) IP: 70.95.42.170 |
| ⊘ **COMPLETED** | **06/07/2019** 16:30:37 UTC-6 | The document has been completed. |

# Exhibit D

768 F.3d 871, *877; 2014 U.S. App. LEXIS 18019, **12

*Sch. Dist.*, 228 F.3d 1003, 1017 (9th Cir. 2000), cert. denied, 532 U.S. 994, 121 S. Ct. 1653, 149 L. Ed. 2d 636 (2001). For example, the *First Amendment* does not require the federal government to fund messages both for and against abortion. *Cf. Rust v. Sullivan, 500 U.S. 173, 203, 111 S. Ct. 1759, 114 L. Ed. 2d 233 (1991)* (upholding, under the government speech doctrine, regulations forbidding certain publicly funded doctors from endorsing abortion). Similarly, in this context, the doctrine would preclude Campbell-Ewald from demanding that the Navy create an advertising campaign that discourages military participation. The government speech doctrine is simply immaterial to the present dispute, in which the plaintiff is not advocating for viewpoint neutrality, but is instead challenging the regulation of a particular means of communication.

IV.

Campbell-Ewald nevertheless argues that it cannot be held liable for *TCPA* violations because it outsourced the dialing and did not actually make any calls on behalf of its client. *See 47 U.S.C. § 227(b)(1)(A)(iii)* (rendering it unlawful "to make any call" using an automated dialing system). *Gomez*, in fact, concedes that a third [**13] party transmitted the disputed messages. Even so, Campbell-Ewald's argument is not persuasive.

Although Campbell-Ewald did not send any text messages, it might be vicariously liable for the messages sent by Mindmatics. The statute itself is silent as to *vicarious liability*. We therefore assume that Congress intended to incorporate "ordinary tort-related *vicarious liability* rules." *Meyer v. Holley, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)*. Accordingly, *HN8* "[a]bsent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of *vicarious liability* . . . ." *Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)*, aff'd, *582 F. App'x 678, 2014 U.S. App. LEXIS 12547, 2014 WL 2959160 (9th Cir. 2014)* (per curiam). Although we have never expressly reached this question, several of our district courts have already concluded that the *TCPA* imposes *vicarious liability* where an agency relationship, as defined by federal common law, is established between the defendant and a third-party caller.[5]

[*878] This interpretation is consistent with that of the statute's implementing agency, which has repeatedly acknowledged the existence of *vicarious liability* under the *TCPA*. *HN9* The Federal Communications Commission is expressly imbued with authority [**14] to "prescribe regulations to implement the requirements" of the *TCPA*. *47 U.S.C. § 227(b)(2)*. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA* of 1991, 10 FCC Rcd. 12391, 12397 (1995). More recently, the FCC has clarified that *vicarious liability* is imposed "under federal common law principles of agency for violations of either *section 227(b)* or *section 227(c)* that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 (2013)*. Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded *Chevron* deference. *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc., 423 F.3d 1056, 1065 (9th Cir. 2005)* (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980-85, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005)*) (other citations omitted), aff'd, *550 U.S. 45, 127 S. Ct. 1513, 167 L. Ed. 2d 422 (2007)*; *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)* ("If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." (footnote omitted)).

Campbell-Ewald concedes that the FCC already recognizes *vicarious liability* in this context, but argues that *vicarious liability* only extends to the merchant whose goods or services are being promoted [**15] by the telemarketing campaign. Yet the statutory language suggests otherwise, as *§ 227(b)* simply imposes *liability* upon "any person"—not "any merchant." *See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 221, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008)* (interpreting the use of "any" as "all-encompassing"); *47 C.F.R. § 64.1200*

[5]  *Ibid. See also Kristensen v. Credit Payment Servs.*, No. 2:12-CV-00528-APG, ___ F. Supp. 2d ___, 12 F. Supp. 3d 1292, 2014 U.S. Dist. LEXIS 41696, 2014 WL 1256035 (D. Nev. Mar. 26, 2014); *In re Jiffy Lube Int'l Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

Congress's 2015 amendment to the *TCPA* provides additional information about Congress's views on the scope of the definition of ATDS. After the FCC issued its 2015 order, Congress added language to § 227(b)(1)(A)(iii), exempting the use of an ATDS to make calls "solely to collect a debt owed to or guaranteed by the United States." *Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588* (codified at *47 U.S.C. § 227(b)(1)(A)(iii)*). Like the exception allowing the use of an autodialer to make calls "with the prior express consent of the called party," this debt collection exception demonstrates that equipment that dials from a list of individuals who owe a debt to the United States is still an ATDS but is exempted from the *TCPA*'s strictures. Moreover, in amending this section, Congress left the definition of ATDS untouched, even though the FCC's prior [*25] orders interpreted this definition to include devices that could dial numbers from a stored list. We "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation." *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1072 (9th Cir. 2002)*. Because we infer that Congress was aware of the existing definition of ATDS, its decision not to amend the statutory definition of ATDS to overrule the FCC's interpretation suggests Congress gave the interpretation its tacit approval. *See Lorillard v. Pons, 434 U.S. 575, 580, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978)* ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

HN8[↑] Despite the ambiguity of the statutory definition of ATDS, reading the definition "in [its] context and with a view to [its] place in the overall statutory scheme," *Brown & Williamson Tobacco Corp., 529 U.S. at 133*, we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read *§ 227(a)(1)* to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to [*26] store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers.[8]

HN9[↑] We also reject *Crunch*'s argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "*automatic telephone dialing system*," Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control. *47 U.S.C. § 227(a)(1)* (emphasis added); *see ACA Int'l, 885 F.3d at 703* ("'[A]uto' in autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' *47 U.S.C. § 227(a)(1)*—would seem to envision non-manual dialing of telephone numbers."). Common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions. Congress was clearly aware that, at the very least, a human has to flip the switch on an ATDS. *See The Automated Telephone Consumer Protection Act of 1991, Hearing Before the Subcomm. on Commc'ns of the Comm. on Commerce, Sci., and Transp.*, 102nd Cong. 15 (1991) [*27] (statement of Robert Bulmash, President, Private Citizen, Inc.) (describing a pitch for autodialers in a telemarketing magazine as stating: "You come home from work[, and] turn on the machine, just like turning on a radio."). *Crunch* does not dispute that the Textmunication system dials numbers automatically, and therefore it has the automatic dialing function necessary to qualify as an ATDS, even though humans, rather than machines, are needed to add phone numbers to the Textmunication platform.

D

Because we read *§ 227(a)(1)* to provide that the term

_____

limited to dialing wholly random or sequential blocks of numbers, but could be configured to dial a curated list.

[8] Therefore, we decline to follow the Third Circuit's unreasoned assumption that a device must be able to generate random or sequential numbers in order to qualify as an ATDS. *Dominguez ex rel. Himself v. Yahoo. Inc., 894 F.3d 116, 120 (3d Cir. 2018)* (stating, without explanation, that the plaintiff's claims against Yahoo failed because he "cannot point to any evidence that creates a genuine dispute of fact as to whether [Yahoo's device] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"). In making this assumption, the Third Circuit failed to resolve the linguistic problem it identified in an unpublished opinion in the same case, where it acknowledged that "it is unclear how a number can be *stored* (as opposed to *produced*) using 'a random or sequential number generator.'" *Dominguez v. Yahoo, Inc., 629 F. App'x 369, 372 n.1 (3d Cir. 2015)*. Because the Third Circuit merely avoided the interpretive questions raised by the statutory definition of ATDS, its published opinion is unpersuasive.

# Exhibit E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EVERETT SHELTON, | : | CIVIL CASE |
| | : | |
| Plaintiff(s) | : | Case No.  2:18-cv-02071 |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | May 1, 2019 |
| FAST ADVANCE FUNDING, LLC | : | Time 9:15 a.m. to 9:59 p.m. |
| | : | |
| Defendant(s), | : | |

. . . . . . . . . . . . . .
    :

TRANSCRIPT OF HEARING AND ORAL ARGUMENTS
BEFORE THE HONORABLE CHAD F. KENNEY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:        Bryan Anthony Reo, Esq.
                          Reo Law LLC
                          PO Box 5100
                          Mentor, OH 44061

For Defendant:            John P. Hartley, Esq.
                          Complete Business Solutions Group
                          20 N. 3rd Street
                          Philadelphia, PA 19106

Court Recorder:           Christopher Kurek
                          Clerk's Office
                          U.S. District Court

Transcription Service:    Precise Transcripts
                          45 N. Broad Street
                          Ridgewood, NJ 07450

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

 1              MR. HARTLEY:  I do agree with you Your Honor.

 2              THE COURT:  Right.

 3              MR. HARTLEY:  It's just that --

 4              THE COURT:  So, where were you asking for

 5    discovery on that issue all along, where was your client

 6    all along to participate in this case?  That's a question

 7    you have to ask your client, I wondered all along where

 8    your client was in this case.  Now they want to raise a

 9    legal issue that requires some discovery, requires to ask

10    for discovery, now you come in and say, Judge it's, it's a

11    -- I want, I want my record, you had all this time to

12    create your record and make this argument, all this time

13    for me to, potentially, to decide this on summary

14    judgment, to go through all the, to go through all the law

15    and to make a decision, and now you don't have your

16    record.  And, that's not on me, that's not on the Court,

17    that's on your client.  And, I could see the attitude of

18    your client through your attorney in the Rule 16, that I'm

19    not going to just -- I'm, I'm -- we're not doing anything

20    with this because we don't believe in their case and it

21    looked as if they were like, because they're serial

22    litigant.  Well, the only way this, this act is going to

23    get any teeth in it at all is through a serial litigant.

24    So, I just don't understand why your, your client took

25    that approach and it's interesting to me from a visual

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

May 10, 2019

# Exhibit F



ANTON A. EWING
3077 CLAIREMONT DR # 372
SAN DIEGO, CA 92117-6800

**Page:** A-2 of 38
**Bill Cycle Date:** 08/10/17 - 09/09/17
**Account:** 337032098931

Visit us online at: **www.att.com**

## 619 719-9640
### ANTON A. EWING

### Call Detail - Continued

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|---|---|---|---|---|---|---|---|
| **Monday, 08/14** | | | | | | | |
| 10:16a | Toll F CL | | SDDV | | 41 | 0.00 | 0.00 |
| 10:57a | SNDG S CA | | SDDV | | 1 | 0.00 | 0.00 |
| 10:59a | SNDG S CA | | SDDV | | 1 | 0.00 | 0.00 |
| 10:59a | ESCOND CA | | SDDV | | 1 | 0.00 | 0.00 |
| 11:22a | CORONA CA | | SDDV | | 5 | 0.00 | 0.00 |
| 11:50a | INCOMI CL | | SDDV | | 2 | 0.00 | 0.00 |
| 12:18p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 12:20p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 01:55p | RANCPE CA | | SDDV | | 10 | 0.00 | 0.00 |
| 02:05p | CORONA CA | | SDDV | | 3 | 0.00 | 0.00 |
| 02:15p | INCOMI CL | | SDDV | | 15 | 0.00 | 0.00 |
| 02:58p | CORONA CA | | SDDV | | 2 | 0.00 | 0.00 |
| 03:06p | INCOMI CL | | SDDV | | 5 | 0.00 | 0.00 |
| 03:16p | SNDG S CA | | SDDV | | 2 | 0.00 | 0.00 |
| 03:18p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 11:08p | IRVING TX | | SDDV | | 3 | 0.00 | 0.00 |
| 11:19p | IRVING TX | | SDDV | | 2 | 0.00 | 0.00 |
| 11:47p | IRVING TX | | SDDV | | 5 | 0.00 | 0.00 |
| **Tuesday, 08/15** | | | | | | | |
| 12:11a | IRVING TX | | SDDV | | 1 | 0.00 | 0.00 |
| 09:12a | INCOMI CL | | SDDV | | 6 | 0.00 | 0.00 |
| 10:00a | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 10:04a | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 10:04a | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 11:05a | POWAY CA | | SDDV | | 3 | 0.00 | 0.00 |
| 12:01p | INCOMI CL | | SDDV | | 3 | 0.00 | 0.00 |
| 05:43p | BLOCKED | | SDDV | | 2 | 0.00 | 0.00 |
| 06:28p | BLOCKED | 000-000-000 | SDDV | | 1 | 0.00 | 0.00 |
| **Wednesday, 08/16** | | | | | | | |
| 02:15p | BLOCKED | | SDDV | | 1 | 0.00 | 0.00 |
| 02:49p | BLOCKED | | SDDV | | 3 | 0.00 | 0.00 |
| 03:18p | BLOCKED | | SDDV | | 8 | 0.00 | 0.00 |
| **Thursday, 08/17** | | | | | | | |
| 02:37p | BLOCKED | | SDDV | | 12 | 0.00 | 0.00 |
| 03:28p | BLOCKED | | SDDV | | 5 | 0.00 | 0.00 |
| 03:36p | BLOCKED | | SDDV | | 2 | 0.00 | 0.00 |
| 05:13p | INCOMI CL | | SDDV | | 6 | 0.00 | 0.00 |
| 06:20p | BLOCKED | | SDDV | | 1 | 0.00 | 0.00 |
| **Friday, 08/18** | | | | | | | |
| 09:24a | BLOCKED | 000-000-0000 | SDDV | | 25 | 0.00 | 0.00 |
| 11:03a | INTERN CL | | SDDV | | 1 | 0.00 | 0.00 |
| 11:06a | INTERN CL | | SDDV | | 1 | 0.00 | 0.00 |
| 02:54p | BLOCKED | 000-000-0000 | SDDV | | 15 | 0.00 | 0.00 |
| 06:07p | LOCAL CL | 18008298417 | SDDV | | 8 | 0.00 | 0.00 |
| 06:09p | BLOCKED | 000-000-0000 | SDDV | | 2 | 0.00 | 0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|---|---|---|---|---|---|---|---|
| **Friday, 08/18** | | | | | | | |
| 06:16p | LOCAL CL | | SDDV | | 1 | 0.00 | 0.00 |
| 06:16p | LOCAL CL | | SDDV | | 1 | 0.00 | 0.00 |
| 06:22p | LOCAL CL | | SDDV | | 4 | 0.00 | 0.00 |
| 06:39p | LOCAL CL | | SDDV | | 3 | 0.00 | 0.00 |
| **Saturday, 08/19** | | | | | | | |
| 12:00p | LOCAL CL | | SDDV | | 5 | 0.00 | 0.00 |
| 07:25p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| **Sunday, 08/20** | | | | | | | |
| 01:28p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 01:40p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 02:55p | Toll F CL | | SDDV | | 2 | 0.00 | 0.00 |
| 03:13p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| **Monday, 08/21** | | | | | | | |
| 08:10a | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 08:13a | INCOMI CL | | SDDV | | 2 | 0.00 | 0.00 |
| 08:15a | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 08:18a | INCOMI CL | | SDDV | | 3 | 0.00 | 0.00 |
| 08:54a | INCOMI CL | | SDDV | | 7 | 0.00 | 0.00 |
| 09:10a | INCOMI CL | | SDDV | | 5 | 0.00 | 0.00 |
| 09:21a | INCOMI CL | | SDDV | | 2 | 0.00 | 0.00 |
| 09:54a | INCOMI CL | | SDDV | | 5 | 0.00 | 0.00 |
| 10:19a | INCOMI CL | | SDDV | | 4 | 0.00 | 0.00 |
| 10:50a | INCOMI CL | | SDDV | | 14 | 0.00 | 0.00 |
| 01:34p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 01:47p | INCOMI CL | | SDDV | | 3 | 0.00 | 0.00 |
| 01:52p | CORONA CA | | SDDV | | 4 | 0.00 | 0.00 |
| 02:00p | Toll F CL | | SDDV | | 1 | 0.00 | 0.00 |
| 02:01p | Toll F CL | | SDDV | | 1 | 0.00 | 0.00 |
| 02:01p | Toll F CL | | SDDV | | 2 | 0.00 | 0.00 |
| 02:03p | Toll F CL | | SDDV | | 1 | 0.00 | 0.00 |
| 04:28p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 04:28p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 04:29p | INCOMI CL | | SDDV | | 14 | 0.00 | 0.00 |
| 04:42p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 04:44p | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 04:45p | SNDG S CA | | SDDV | | 2 | 0.00 | 0.00 |
| 04:50p | INCOMI CL | | SDDV | | 4 | 0.00 | 0.00 |
| 04:57p | NEMPOR TN | | SDDV | | 2 | 0.00 | 0.00 |
| 05:14p | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 05:38p | INCOMI CL | | SDDV | | 11 | 0.00 | 0.00 |
| 05:49p | INCOMI CL | | SDDV | | 6 | 0.00 | 0.00 |
| 08:11p | INCOMI CL | | SDDV | | 3 | 0.00 | 0.00 |
| 08:47p | INCOMI CL | | SDDV | | 7 | 0.00 | 0.00 |
| 11:31p | CHULAV CA | | SDDV | | 1 | 0.00 | 0.00 |
| **Tuesday, 08/22** | | | | | | | |
| 09:31a | CORONA CA | | SDDV | | 1 | 0.00 | 0.00 |
| 10:07a | CORONA CA | | SDDV | | 2 | 0.00 | 0.00 |
| 10:45a | INCOMI CL | | SDDV | | 1 | 0.00 | 0.00 |
| 12:06p | INCOMI CL | | SDDV | | 2 | 0.00 | 0.00 |
| 12:12p | Toll F CL | | SDDV | | 1 | 0.00 | 0.00 |

© 2012 AT&T Intellectual Property. All rights reserved.

 **AT&T**

...619.719.9640 continued

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| *Sunday, Jun 02* | | | | | | | |
| 03:32pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 08:03pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 08:48pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| *Monday, Jun 03* | | | | | | | |
| 07:56am | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 08:00am | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 09:12am | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 10:36am | INCOMI CL | | SDDV | | 7 | $0.00 | $0.00 |
| 10:43am | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 10:48am | Toll F CL | | SDDV | | 4 | $0.00 | $0.00 |
| 10:53am | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 11:23am | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 12:00pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 12:21pm | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 01:13pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 02:06pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 02:07pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 02:28pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 03:10pm | LOSANG CA | | SDDV | | 2 | $0.00 | $0.00 |
| 03:16pm | LA MES CA | | SDDV | | 1 | $0.00 | $0.00 |
| 03:19pm | INCOMI CL | | SDDV | | 17 | $0.00 | $0.00 |
| 04:41pm | WALDOR MD | | SDDV | | 1 | $0.00 | $0.00 |
| 04:41pm | BEREA OH | | SDDV | | 2 | $0.00 | $0.00 |
| 04:54pm | OCSD C CA | | SDDV | | 4 | $0.00 | $0.00 |
| 05:16pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| *Tuesday, Jun 04* | | | | | | | |
| 11:35am | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 11:47am | INCOMI CL | | SDDV | | 4 | $0.00 | $0.00 |
| 11:55am | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 12:08pm | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 12:21pm | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 12:51pm | SNDG S CA | | SDDV | | 2 | $0.00 | $0.00 |
| 02:20pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 02:49pm | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 04:34pm | INCOMI CL | | SDDV | | 7 | $0.00 | $0.00 |
| 04:52pm | CORONA CA | | SDDV | | 2 | $0.00 | $0.00 |
| 05:19pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| *Wednesday, Jun 05* | | | | | | | |
| 06:10am | WASHIN DC | | SDDV | | 2 | $0.00 | $0.00 |
| 08:34am | MONTEB CA | | SDDV | | 1 | $0.00 | $0.00 |
| 08:48am | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 10:17am | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 10:20am | LOSANG CA | | SDDV | | 2 | $0.00 | $0.00 |
| 01:27pm | SILVER WA | | SDDV | | 2 | $0.00 | $0.00 |
| 01:39pm | LA JOL CA | | SDDV | | 1 | $0.00 | $0.00 |
| 01:41pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 01:52pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 01:53pm | LA JOL CA | | SDDV | | 9 | $0.00 | $0.00 |
| 02:46pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 02:46pm | SNFN S CA | | SDDV | | 1 | $0.00 | $0.00 |
| 02:57pm | INCOMI CL | | SDDV | | 28 | $0.00 | $0.00 |
| 03:08pm | Toll F CL | | SDDV | CONF | 17 | $0.00 | $0.00 |
| 03:25pm | RANCHO CA | | SDDV | | 9 | $0.00 | $0.00 |
| 03:43pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 04:38pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 06:19pm | SCAPPO OR | | SDDV | | 3 | $0.00 | $0.00 |
| 07:01pm | PAULS OK | | SDDV | | 1 | $0.00 | $0.00 |
| *Thursday, Jun 06* | | | | | | | |
| 09:45am | LA MES CA | | SDDV | | 1 | $0.00 | $0.00 |
| 10:14am | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 10:35am | INCOMI CL | | SDDV | | 5 | $0.00 | $0.00 |
| 11:57am | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 11:58am | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 11:58am | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 11:59am | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 11:59am | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 12:00pm | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 12:01pm | SILVER WA | | SDDV | | 1 | $0.00 | $0.00 |
| 01:01pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 01:15pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 02:03pm | Toll F CL | | SDDV | | 40 | $0.00 | $0.00 |
| 02:45pm | WASHIN DC | | SDDV | | 2 | $0.00 | $0.00 |
| 02:47pm | IRVINE CA | | SDDV | | 3 | $0.00 | $0.00 |
| 03:18pm | INCOMI CL | | SDDV | | 4 | $0.00 | $0.00 |
| 03:25pm | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 03:34pm | CORONA CA | | SDDV | | 2 | $0.00 | $0.00 |
| 03:36pm | CHULAV CA | | SDDV | | 4 | $0.00 | $0.00 |
| 03:47pm | INCOMI CL | | SDDV | | 6 | $0.00 | $0.00 |
| 04:20pm | INCOMI CL | | SDDV | | 10 | $0.00 | $0.00 |
| 05:03pm | INCOMI CL | | SDDV | | 14 | $0.00 | $0.00 |
| 05:29pm | INCOMI CL | | SDDV | | 9 | $0.00 | $0.00 |
| 05:38pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 05:42pm | VAN NU CA | | SDDV | | 4 | $0.00 | $0.00 |
| 05:46pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 05:51pm | SNFC C CA | | SDDV | | 1 | $0.00 | $0.00 |
| 06:06pm | SNFC C CA | | SDDV | | 1 | $0.00 | $0.00 |
| 08:07pm | CORONA CA | | SDDV | | 5 | $0.00 | $0.00 |
| *Friday, Jun 07* | | | | | | | |
| 09:38am | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 11:10am | NATION CA | | SDDV | | 3 | $0.00 | $0.00 |
| 11:57am | LA MES CA | | SDDV | | 3 | $0.00 | $0.00 |
| 12:00pm | LA MES CA | | SDDV | | 7 | $0.00 | $0.00 |
| 12:10pm | INCOMI CL | | SDDV | | 15 | $0.00 | $0.00 |
| 12:46pm | Toll F CL | | SDDV | | 15 | $0.00 | $0.00 |
| 01:07pm | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 01:19pm | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 01:44pm | INCOMI CL | 619.282.5880 | SDDV | | 20 | $0.00 | $0.00 |
| 02:11pm | HOLLEY FL | | SDDV | | 14 | $0.00 | $0.00 |
| 02:52pm | CHICAG IL | | SDDV | | 1 | $0.00 | $0.00 |
| 03:14pm | INCOMI CL | | SDDV | | 1 | $0.00 | $0.00 |
| 03:18pm | QUINCY MA | | SDDV | | 2 | $0.00 | $0.00 |
| 03:20pm | SCAPPO OR | | SDDV | | 2 | $0.00 | $0.00 |
| 03:27pm | TUCSON AZ | | SDDV | | 1 | $0.00 | $0.00 |
| 03:30pm | WYCKOF NJ | | SDDV | | 1 | $0.00 | $0.00 |
| 03:31pm | HOLLEY FL | | SDDV | | 2 | $0.00 | $0.00 |
| 04:20pm | INCOMI CL | | SDDV | | 2 | $0.00 | $0.00 |
| 04:34pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 05:34pm | CORONA CA | | SDDV | | 2 | $0.00 | $0.00 |
| *Saturday, Jun 08* | | | | | | | |
| 11:51am | INCOMI CL | | SDDV | | 3 | $0.00 | $0.00 |
| 07:01pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 08:01pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| *Sunday, Jun 09* | | | | | | | |
| 01:10pm | CORONA CA | | SDDV | | 1 | $0.00 | $0.00 |
| 02:16pm | LOWER CA | | SDDV | | 1 | $0.00 | $0.00 |
| 02:23pm | LOWER CA | | SDDV | | 1 | $0.00 | $0.00 |

519.719.9640 continues...

**Anton A. Ewing <anton@antonewing.com> 06/14/19 10:18**

<u>Print</u>    Cancel

| | |
|---|---|
| **From:** | Verify@DonotCall.gov |
| **To:** | anton@antonewing.com |
| **Received-On:** | Today 10:13 |
| **Subject:** | National Do Not Call Registry - Your Registration Is Confirmed |
| **More...** | |

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9640 on February 16, 2012. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit <u>https://www.donotcall.gov</u>  to register another number or file a complaint against someone violating the Registry.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS112613
Cashier ID: akukura
Transaction Date: 06/14/2019
Payer Name: Anton Ewing
-----------------------------------------
CIVIL FILING FEE
For: Anton Ewing
Case/Party: D-CAS-3-19-CV-001112-001
Amount:            $400.00
-----------------------------------------
CREDIT CARD
Amt Tendered:  $400.00
-----------------------------------------
Total Due:         $400.00
Total Tendered: $400.00
Change Amt:      $0.00


There will be a fee of $53.00
charged for any returned check.